IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

GENEVA RICHMOND, deceased,

        Plaintiff,

v.                              CIVIL ACTION NO. 2:09-cv-00888

ACTAVIS TOTOWA, LLC., et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are 1) plaintiff's counsel's motion to withdraw [Dckt. 13]; 2) defendants' motion for sanctions [Dckt. 15]; and 3) defendants' motion to vacate plaintiff's notice of dismissal [Dckt. 19].

On November 30, 2009, plaintiff's counsel Scott Weinstein moved to withdraw based upon his contention that the attorney-client relationship with Cathy Simms, executor of the decedent plaintiff's estate, was irretrievably broken. He asserted further that the plaintiff was served with a copy of his motion and did not object to withdrawal. On December 2, 2009, the defendants moved for sanctions under Federal Rule of Civil Procedure 11. The defendants asserted that the contention in the complaint that Digitek caused the decedent's injuries lacked any evidentiary support.

That same day, I entered an order directing the plaintiff to respond in writing concerning whether she wished to proceed *pro se* or retain substitute counsel. No response was received from the plaintiff by December 16, 2009, the deadline that I imposed. The plaintiff did, however, on that day notice her voluntary dismissal of this action without prejudice pursuant to Rule 41(a), asserting

she was entitled to do so based upon the defendants' failure to answer. At the same time, Mr. Weinstein also responded in opposition to the motion for sanctions. He asserted, in part, as follows:

> Because of irreconcilable differences that arose between Plaintiff and Plaintiff's Counsel during the safe harbor period provided by Fed. R. Civ. P. 11(c)(2), Plaintiff's Counsel moved to withdraw from representation in this case on November 30, 2009. Subsequent to the filing of Defendants' Motion for Sanctions, Plaintiff instructed Plaintiff's Counsel to dismiss her case, which Plaintiff's Counsel did by way of Notice of Dismissal on December 16, 2009. Despite the fact that the ultimate relief requested by Defendants in their Motion for Sanctions has been realized, Defendants have declined the undersigned's request for Defendants to withdraw their motion.

(Resp. at 1 n.1). Mr. Weinstein also responded in substance to the motion for sanctions, asserting in pertinent part as follows:

> Specifically, at the time the Complaint was filed, Plaintiff's Counsel had the Plaintiff's prescription bottle for Digitek evidencing that a prescription for Digitek manufactured by Bertek was filled. Plaintiff's Counsel had a letter from the Plaintiff's pharmacy confirming that the Digitek she received was part of the recall. Plaintiff's counsel also had a medical record evidencing at least one hospitalization, as well as Plaintiff's death certificate. In addition, Plaintiff's Counsel had the benefit of lengthy and detailed discussions with the Plaintiff who described her symptoms following ingestion of the recalled Digitek, including vision changes, blurred vision, difficulty breathing, urinary problems, nausea, dizziness, and heart palpitations, all of which are symptoms consistent with the ingestion of defectively-manufactured digoxin pills.
>
> Defendants contend that Plaintiff's allegations lack evidentiary support because the medical and pharmacy records produced fail to indicate that the decedent was diagnosed with digoxin toxicity or that digoxin toxicity was the cause of her death. Plaintiff vehemently disputes this contention, which is far from established in this litigation. While Defendants understandably want to see a bright line test in this regard, no such bright line exists at this point in the proceedings, and it certainly did not exist at the time of filing of Plaintiff's Complaint. Indeed, much expert testimony is anticipated in this litigation as to the causal relationship between defective Digitek and the numerous adverse outcomes suffered by affected Plaintiffs.
>
> As to the instant case, Plaintiff's Counsel conducted a reasonable inquiry of available documents and witness accounts, including a review of a plethora of medical/causation information available to the public (from the FDA and many other sources) following the Digitek recall. Thereafter, Plaintiff's Counsel had reason to

>believe the existence of a causal link between the Plaintiff's ingestion of Digitek and her injuries. Plaintiff's Counsel further reasonably believed that evidentiary support for the factual contentions set forth in the Complaint would be strengthened through further investigation and discovery, including expert testimony. . . .

(*Id.* at 2-3).

On December 22, 2009, the defendants moved to vacate the December 16, 2009, notice of voluntary dismissal. The defendants have not filed an answer to the complaint. In sum, however, they contend that the combination of certain language in PTO 16 and Rule 41(a)(1)(A)(i) should be construed so as to treat their entry of an appearance as constituting an answer for purposes of precluding voluntary dismissal without a court order. The PTO 16 language relied upon by the defendants states as follows:

>**Answers to Short-Form Complaints Not Required**. Defendants are not required to file answers to Short-Form Complaints. An entry of appearance shall constitute a denial of all allegations in the Short-Form Complaint and an assertion of all defenses that are included in the Defendant's Master Answer. This paragraph does not preclude the filing of Rule 12 motions or any other motion in any particular case at other times, as appropriate.

(PTO 16 ¶ 1.D).

The difficulty with the defendants' assertion is that paragraph 1.D does not provide that the entry of appearance formally constitutes an answer. In actuality, the subsection heading unambiguously provides that "Answers" are unnecessary. The entry of appearance in this action served some, perhaps many, of the purposes of an answer, but the language of Rule 41(a)(1)(A)(i) leaves little room for interpretation. If the defendants wish, at some future time in some other case, to prevent the action taken by the plaintiff here, they are given leave to file an otherwise untimely, formal answer in any case in which they intend to pursue the Rule 11 process and thereby prevent resort to Rule 41(a)(1)(A)(i) that could be perceived as thwarting the purposes of Rule 11.

-3-

Accordingly, I am unable to treat the entry of an appearance under PTO 16 as an "answer" as that term of art is understood within the Federal Rules of Civil Procedure. I **DENY** the motion to vacate the plaintiff's notice of dismissal [Dckt. 19]. Furthermore, I **DENY** the motion to withdraw as counsel [Dckt. 13] as moot. That does not, however, end the sanctions inquiry prompted by the defendants. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("The view more consistent with Rule 11's language and purposes, and the one supported by the weight of Circuit authority, is that district courts may enforce Rule 11 even after the plaintiff has filed a notice of dismissal under Rule 41(a)(1)."); *Bakker v. Grutman*, 942 F.2d 236, 241 (4th Cir. 1991).

The defendants arguments concerning Rule 11 are not entirely without merit. They note among other things that (1) plaintiff's counsel did not possess any medical records at the time of filing, and (2) he could not have had the decedent's death certificate in hand at the time of filing since she did not pass away until months after this action was instituted. At the same time, Mr. Weinstein appears to have exhibited a measure of pre-, and post-, filing diligence that would weigh against a sanctions award. From a pre-filing standpoint, in addition to the arguments made above, he asserts as follows:

> Since the Digitek recall, Plaintiff's Counsel have been retained by 143 such clients [clients who believe they suffered harm by taking defective Digitek]. During the months following the recall, the undersigned investigated and declined further representation of 61 of these clients because there was not sufficient evidentiary support to pursue a claim.

(Resp. to Mot. to Vacate at 4).

From a post-filing standpoint, Mr. Weinstein contends that he did everything possible to cure any potential Rule 11 violation during the safe harbor period. He asserts that when it became

-4-

apparent from continued investigation and developments in the MDL that the plaintiff's allegations could not be supported at trial (and during the Rule 11 safe harbor period) he advised his client and strongly recommended dismissal of the case, which would have extinguished any Rule 11 issue. He asserts that the plaintiff initially balked at dismissal and wished to discuss the matter with her extended family so as to reach a consensus concerning whether to proceed with the case and seek other legal counsel. In response, Mr. Weinstein asserts he took the only available action and promptly moved to withdraw[1]. Ultimately the plaintiff directed him to dismiss this action outright - but only after the safe harbor period had expired and the motions for sanctions had been filed.

This case appears to be one of unfortunate timing on behalf of the decedent plaintiff's family. Instructing counsel to dismiss the case just days earlier within the safe harbor period would have avoided this satellite litigation altogether. Given that the case has in fact already been dismissed, the ultimate goal of the defendants has been realized. However, the voluntary dismissal filed by the plaintiff was without prejudice. Considering the plaintiff was apparently aware of counsel's strong recommendation to dismiss during the safe harbor period, the delay was ultimately the fault of the plaintiff's family. Also, the plaintiff has conceded to dismissal with prejudice according to her lawyer. Accordingly, I **DIRECT** that the dismissal be with prejudice.

Nothing indicates that an award of attorney fees and expenses would be appropriate in this case. While the timing of plaintiff's counsel's motion to withdraw was, as a practical matter, an indication to defendants that this case likely would not be pursued, I caution counsel that it is not

---

[1] The fact the basis for withdrawal is "irreconcilable differences" between counsel and the deceased plaintiff's executor lends support to counsel's allegation that he had strongly advised dismissal of the action. It also further indicates an affirmative attempt, albeit non-direct as to the defendants, to disengage from advocating a position that in counsel's estimation was no longer tenable - during the safe harbor period.

an acceptable substitute for direct communication with defendants' counsel during the safe harbor period as to the status of the litigation. In this case, for example, that communication could have taken the form of an explanation that counsel had strongly advised dismissal of the action and the family of the plaintiff was considering their options. It is unclear from the filings if any such communication took place; however, even in light of the plaintiff ultimately dismissing the case a few days later, the defendants continued pursuit of sanctions.

The substance of the motion for Rule 11 sanctions relies heavily on arguments that plaintiff's counsel did not serve defendants with any medical or pharmacy records when they served the plaintiff fact sheet[2] and that none of the records since provided indicate the decedent experienced elevated serum digoxin levels, that such levels were toxic or that she experienced injuries as a result of digoxin toxicity. I reiterate a finding I have made in other recent memorandum opinions and orders. Imposing a bright line, prefiling standard requiring evidence of causation in defense of a Rule 11 motion would in effect require counsel to secure the type of proof necessary to withstand a motion for summary judgment. Such a purpose was not contemplated by Rule 11 and, accordingly, motions for Rule 11 sanctions will not be accepted as suitable substitutions for summary judgment motions to be filed at the appropriate time in this MDL. Advisory Committee Notes on Rule 11 provide:

---

[2] A fact defended by plaintiff's counsel as a "failure to produce documents caused by a widespread internal administrative error, as evidenced by the fact that the undersigned initially did not produce documents in *any* of the undersigned's ten filed cases. These fact sheet deficiencies were remedied through a supplementary document production prior to Defendants' Rule 11 filings." (Pl. Memo in Oppos. n. 5 at 6). The court further notes that plaintiff's counsel denied allegations within defendants' other requests for admissions - the subject of which have been an ongoing basis for filing of Rule 11 motions.

> [Rule 11 motions] should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position,... [or] to intimidate an adversary into withdrawing contentions that are fairly debatable. . . .

Fed. R. Civ. P. 11, Advisory Committee Notes.

For all of the forgoing reasons, I hereby **DENY** the motion for sanctions [Dckt.15], **DENY** the motion to vacate the plaintiff's notice of dismissal [Dckt. 19], **DENY** the motion to withdraw as counsel [Dckt. 13] as moot and **ORDER** the dismissal of the action to be with prejudice.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                                      ENTER: April 8, 2010

                                      Joseph R. Goodwin, Chief Judge